UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHANE COLEMAN, | ) | |
| | ) | No. 24 CV 1195 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| PAM BONDI, Attorney General of the United States, | ) ) | |
| | ) | March 10, 2025 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff Shane Coleman filed this disability discrimination suit against Defendant Merrick Garland, then-serving Attorney General of the United States charged with overseeing the Federal Bureau of Investigation ("FBI").[1] Coleman alleges that the FBI violated Section 501 of the Rehabilitation Act of 1973, as amended, by discontinuing his employment application based on his recorded disability, or alternatively, because the FBI perceived him as being disabled. Discovery is ongoing, and Coleman seeks to depose Drew Ambrose, an attorney with the FBI, as a fact witness. Before the court is the FBI's motion for a protective order barring Ambrose's deposition. For the following reasons, the motion is granted:

---

[1] On February 4, 2025, the Senate confirmed Pam Bondi as Attorney General of the United States. As a result, she is substituted as Defendant in this case, replacing Merrick Garland.

**Background**

Coleman, a police officer and SWAT Assistant Team Leader and Training Instructor with the Chicago Police Department ("CPD"), applied to be an FBI Special Agent in January 2022. (R. 1, Compl. ¶¶ 5-7.) The FBI extended an offer of employment to Coleman in March 2022, partially conditioned on a successful physical fitness test and medical review. (Id. ¶ 9.) Six days after the offer, Coleman suffered a cardiac arrest without any apparent cause. (Id. ¶¶ 11-12.) The FBI conducted a review of Coleman's medical records and discontinued his application in November 2022. (Id. ¶ 15.) Coleman twice appealed this decision, and the FBI finally rejected his application in January 2023. (Id. ¶¶ 18-22.) Coleman then filed this action accusing the FBI of discriminating against him based on a perceived disability.

Coleman now seeks to depose Ambrose, arguing that as then-serving Assistant General Counsel in the FBI's Human Resources Division, Ambrose was directly involved in the decision to discontinue Coleman's application. (R. 26, Govt.'s Mot. ¶¶ 5, 8, Ex. 1 ¶ 3.) For support, Coleman cites to a document the FBI produced indicating that the medical officer who disqualified Coleman wrote in an email that "Drew helped write" the "second DQ" and that "Drew was involved with" the "[f]inal DQ letter." (R. 30, Pl.'s Resp. ¶¶ 5-6.) The FBI claims that only medical professionals were involved in the decision to discontinue Coleman's application. (R. 26, Def.'s Mot. ¶ 10.) In an affidavit attached to the current motion, Ambrose attests that he "did not provide the medical review team with any advice concerning

2

the decision to discontinue . . . Coleman's application." (Id. Ex. 1 ¶ 4.) Rather, Ambrose says he was included on emails regarding the FBI's communications to and from Coleman to ensure the medical review team followed proper procedures. (Id.)

## Analysis

The FBI argues that Ambrose, who now serves as Unit Chief of Employment Law Unit II in the FBI's Office of General Counsel, is involved in defending the FBI in this action and, as such, should be protected from sitting for a deposition because he cannot offer any non-privileged or first-hand knowledge of relevant facts and his position as a fact witness would hinder the FBI's case. (R. 26, Govt.'s Mot. ¶ 7, Ex. 1 ¶¶ 1-2, 5.) Under Rule 26(b)(1), a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). Coleman correctly notes that an attorney, even one representing the opposing party, may be deposed despite claims that the deposition would violate the attorney-client privilege. *See Hunt Int'l Res. Corp. v. Binstein*, 98 F.R.D. 689, 689 (N.D. Ill. 1983) (holding that an attorney may be deposed and, during the deposition, may claim privilege as needed); Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose *any* person" (emphasis added)). As such, the FBI's assertion of the attorney-client privilege alone is not enough to bar Ambrose's deposition. *See Marco Island*

3

*Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 419 (N.D. Ill. 1987) ("Although it would confine the boundaries of the [] deposition, the mere invocation of the [attorney-client] privilege, without more, would not justify granting plaintiffs' motion.").

Nonetheless, the court has the discretionary power to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2). In this district, a party seeking to depose the opposing party's attorney must first "exhaust other reasonable means of obtaining relevant information." *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4777337, at *13 (N.D. Ill. Oct. 13, 2021) (collecting cases). Courts impose this heightened burden because the deposition of an attorney "provides a unique opportunity for harassment; it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness." *Marco Island*, 117 F.R.D. at 420; *see also Espejo v. Santander Consumer USA, Inc.*, No. 11 CV 8987, 2014 WL 6704382, at *3 (N.D. Ill. Nov. 25, 2014) ("[T]he deposition of a party's attorney—whether in-house or trial counsel—does impose more of a burden than the deposition of other fact witnesses."). While Ambrose has not appeared in this case as an attorney of record, he has attested that he is involved in defending this case. (R. 26, Govt.'s Mot. ¶ 11, Ex. 1 ¶¶ 1-2.) Coleman, as the party requesting the deposition of an opposing attorney, must therefore demonstrate that Ambrose's deposition would produce relevant information not available from other reasonable sources. *See St. Paul*

4

*Guardian Ins. Co.*, 2021 WL 4777337, at *10 (citing *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)).

But Coleman fails to demonstrate that Ambrose's deposition would yield material, non-privileged information relevant to his claims. Indeed, Coleman requests Ambrose's deposition to "determine which person or people made the decision to disqualify him, when the decision was made, and why those people made that decision." (R. 30, Pl.'s Resp. ¶ 2.) But Coleman does not sufficiently explain why Ambrose should be the source of that information or whether other sources are available for the same information. This is particularly significant given that Coleman acknowledges that the FBI answered an interrogatory ("INT") that "Dr. Kevin Kapov was the decision maker, 'with input from Dr. [James] Leonard.'" (Id. ¶ 3, Ex. 1 at 3 (Def.'s Resp. to Pl.'s INT No. 1).)

Despite already having the information Coleman purports to seek from Ambrose, Coleman points to documents the FBI produced to highlight Ambrose's alleged significance in the decision to reject Coleman's application. (Id. ¶¶ 4-7.) But even accepting as true that Ambrose was involved in drafting the letters related to the FBI's discontinuation of Coleman's application, (id.), there is no evidence that Ambrose denied Coleman's application. The emails that Coleman references merely state that Ambrose "helped write" the second disqualification and "was involved with" the final disqualification letter. (Id. ¶¶ 5-7.) The final disqualification letter from the Human Resources Department, also produced in discovery, delivers the news that Coleman's application was denied based on the medical assessment,

5

notes that the decision is final and effective upon receipt, and encourages Coleman to consider other positions. (Id. at 3, Ex. 4.) This letter appears to be a standard rejection letter. Regardless, advising a client in the drafting process of a rejection letter to ensure compliance with internal procedures is simply not the same as making or contributing to the underlying decision to reject Coleman's application. Accordingly, Coleman fails to carry his burden of showing Ambrose's deposition would produce relevant, non-privileged information. *See Anaya v. Birck*, No. 21 CV 02624, 2022 WL 1523640, at *26 (N.D. Ill. May 13, 2022) (granting a motion to quash the subpoena of the defendant's attorney in an employment discrimination case where the plaintiff failed to demonstrate how the desired information would not be duplicative or non-privileged).

## Conclusion

For the foregoing reasons, the FBI's motion is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**